IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALONDO WHEELER | § | |
| (BOP Register No. 49557-177), | § | |
| | § | |
| Movant, | § | |
| | § | |
| V. | § | No. 3:17-cv-413-D-BN |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Movant Alondo Wheeler, a federal prisoner, filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence, asserting four grounds for relief – that his sentence was erroneously enhanced [Grounds 1 and 3] and that his trial counsel was constitutionally ineffective for failing to file a notice of appeal and because his guilty plea was involuntary [Grounds 2 and 4]. *See* Dkt. Nos. 1 & 2.

This resulting action was referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sidney A. Fitzwater.

The government responded to the Section 2255 motion, opposing relief as to all grounds, but conceding that an evidentiary hearing was necessary as to the second ground. *See* Dkt. No. 8. The Court appointed Mr. Wheeler counsel and conducted an evidentiary hearing as to that ground, *see* Dkt. Nos. 9, 10, 17, & 20, and allowed Mr. Wheeler leave to file a *pro se* reply in support of his other grounds for relief, *see* Dkt.

No. 25.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny the Section 2255 motion.

## Applicable Background

In May of 2015, Mr. Wheeler and nineteen co-defendants were indicted on drug conspiracy charges. *See United States v. Wheeler*, No. 3:15-cr-226-D (03) (N.D. Tex.), Dkt. No. 1. Under the Criminal Justice Act, the Court appointed Attorney Phillip W. Hayes to represent Mr. Wheeler. *See id.*, Dkt. Mo. 22.

In October of 2015, Mr. Wheeler pleaded guilty to, and was adjudged guilty of, one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C), and, on April 22, 2016, he was sentenced to 168 months of imprisonment. *See Wheeler*, No. 3:15-cr-226-D (03) (N.D. Tex.), Dkt. No. 402.

This sentence fell in the middle of Mr. Wheeler's advisory Sentencing Guidelines range of 151 to 188 months. That range was based on a Total Offense Level of 29 and a Criminal History Category of VI. Both those components were enhanced because Mr. Wheeler was determined to be a Career Offender under USSG § 4B1.1 based on three prior Texas convictions for unlawful possession with intent to distribute a controlled substance. *See Wheeler*, No. 3:15-cr-226-D (03) (N.D. Tex.), Dkt. No. 312-1 (presentencing report or PSR), ¶¶ 31, 36, 38, 39; *see also id.* at 22-44 (certified copies of the relevant state court documents).

There was no direct appeal. But Mr. Wheeler filed a timely Section 2255 motion in February of 2017.

**Legal Standards and Analysis**

I.    <u>Ground 2</u>

    **A.    Legal Standards**

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a movant must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The movant must also prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at

-3-

689)).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). And,"[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

To demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

"Failure to satisfy either prong is fatal to an ineffective assistance of counsel

claim." *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (per curiam) (quoting *Crutsinger v. Stephens*, 540 F. App'x 310, 313 (5th Cir. 2013) (per curiam); brackets deleted).

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United States Supreme Court "held that the *Strickland* test applies to claims 'that counsel was constitutionally ineffective for failing to file a notice of appeal.'" *Bejarano*, 751 F.3d at 285 (quoting *Flores-Ortega*, 528 U.S. at 477).

As to such a claim, the Court's *Strickland* analysis "begins with the question whether counsel 'consulted' with the defendant regarding an appeal" – that is, whether counsel advised "'the defendant about the advantages and disadvantages of taking an appeal, and [made] a reasonable effort to discover the defendant's wishes,'" *United States v. Cong Van Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (quoting *Flores-Ortega*, 528 U.S. at 478)).

"If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Flores-Ortega*, 528 U.S. at 478; *see also Frazer v. South Carolina*, 430 F.3d 696, 707 (4th Cir. 2005) ("The threshold consideration is whether the defendant had independently decided whether to appeal and communicated that decision to counsel. If the defendant has affirmatively requested an appeal, counsel's assistance to the defendant in making that decision is obviously unnecessary. Indeed, long before *Strickland*, the Supreme Court held that the 'fundamental decision' of whether to

-5-

appeal rests with the defendant." (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983);
citations and footnote omitted)).

> [I]f the petitioner is able to demonstrate by a preponderance of the
> evidence that he requested an appeal, prejudice will be presumed and the
> petitioner will be entitled to file an out-of-time appeal, regardless of
> whether he is able to identify any arguably meritorious grounds for
> appeal that would not be precluded by the terms of his appeal waiver.

*United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007) (noting that *Flores-Ortega*
applies "even where a defendant has waived his right to direct appeal and collateral
review"); *see also Flores-Ortega*, 528 U.S. at 485 (explaining that a "defendant, by
instructing counsel to perfect an appeal, objectively indicate[s] his intent to appeal and
[is] entitled to a new appeal without any further showing" (discussing its holding in
*Rodriguez v. United States*, 395 U.S. 327 (1969))); *Vinyard v. United States*, 804 F.3d
1218, 1228 (7th Cir. 2015) (cases in which a defendant instructs "counsel to appeal only
to have counsel refuse or forget" "justify the presumption because defendants
abandoned by their lawyers have 'suffered injury from that very fact – from the loss of
advocacy services that could have been used to *establish* a non-frivolous issue for
appeal'" (quoting *Betts v. Litscher*, 241 F.3d 594, 597 (7th Cir. 2001); emphasis in
*Betts*)).

> But if

> counsel failed to consult with the defendant about an appeal, then the
> question is whether that failure was unreasonable because it breached
> the duty to consult. "[C]ounsel has a constitutionally imposed duty to
> consult with the defendant about an appeal when there is reason to think
> either (1) that a rational defendant would want to appeal (for example,
> because there are non-frivolous grounds for appeal), or (2) that this
> particular defendant reasonably demonstrated to counsel that he was

interested in appealing." The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known." Whether the conviction followed a trial or a guilty plea is "highly relevant," although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained. The Supreme Court predicted that district courts would find a duty to consult "in the vast majority of cases."

*Cong Van Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480-81).

Where the claim is that counsel breached his constitutionally-imposed duty to

consult with the defendant about an appeal, prejudice is not presumed. Instead,

"a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485.

To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.

*Id.* at 486. The Court has explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694). The defendant need not show "that his hypothetical appeal might have had merit." *Flores-Ortega*, 528 U.S. at 486.

*Bejarano*, 751 F.3d at 285 (some internal citations modified or omitted).

## B.    Analysis

In support of this ground for relief, Mr. Wheeler testified that, "[r]ight after I got

sentenced, I told [Mr. Hayes] that I want to appeal, and [Mr. Hayes] leaned over and

said he will be here, and I haven't seen Mr. Hayes since April the 22nd, 2016." Dkt. No.

20 at 11:15-17.

And his fiancee, Chloe McAlister, testified that she spoke to Mr. Hayes after the sentencing to ask him "what happens from here ... [i]s there any appeals?" *Id.* at 48:12-13. According to Ms. McAlister, Mr. Hayes responded: "I'll talk to you, I'll call you, you know, we'll follow up on that later," but he "didn't really give [her] a for-sure answer right then." *Id.* at 48:17-19. Ms. McAlister further testified that she called Mr. Hayes multiple times, beginning the day after the sentencing, *see id.* at 48-54, but it was not until she sent him a text message that he responded, *see id.* at 52.

Ms. McAlister testified that, in response to that text, he called her back and said "I'm going to meet with Mr. Wheeler. I haven't really spoken with him too much about anything. I know he probably wants to appeal. But I am going to meet with him." *Id.* at 52:21-24. Ms. McAlister also testified that, while she still possesses the phone she used to text Mr. Hayes, that phone is no longer working. *See id.* at 54:11-20.

Mr. Hayes's version of events differs.

> Q ... [I]mmediately after the sentencing, did Mr. Wheeler express to you surprise and alarm or concern about this what he even admitted was an expected sentence?
> A No. As the judge announced the sentence, and he continued to talk about how, you know, why he was applying the sentence, I've got my [PSR] so I went back and looked at my notes, I took the 168 months and I divided it by 12 so I could tell him how many years it's actually going to be. So I'm whispering to him, it's going to be 14 years.... And at that point, he said, am I going to get all my back time? And I said yeah. And so then I multiplied it by .85 and came up with like something like 12-1/2, and I said, that's actually how much you're going to do, and you've been in, you know, eight months. So, so he's like, all right, cool. And that was kind of the end of our conversation.
> Q All right. And you heard him testify that he turned to you and said, I want to appeal, and instructed you to file an appeal?

A He never asked for an appeal. And when we went over the original plea agreement, I let him know, you're going to waive appeal. At the time, he expressed some concern about why am I going to waive appeal? I said, that's just, in a plea bargain, if you want to plead to this count, you know, this is what they're offering you, but you don't have to accept it. And he said, no, no, I'll accept it. And then when the PSR came out, you know, we went back over everything and I said, this is the range, and remember, you don't have a right to appeal unless they screw up and go outside of this range, so you're going to kind of be stuck with what the judge gives you, and he always seemed to really -- I mean, I don't want to say be a tough guy about it, but he was always, you know, you know, yup, all right, I'll do what I gotta do. He was always very understanding that this is how it was going to be.

*Id.* at 31:17-32:25.

Mr. Hayes concurred that he had no further contact with Mr. Wheeler following sentencing. *See id.* at 35:21-36:1. And he testified that, while he had monthly contact with Ms. McAlister prior to sentencing – "She had my office number and my cell phone number. And she would text me from time to time as well." –  his review of his text messages confirmed that he only spoke with Ms. McAlister once after sentencing, on June 30, 2016. *Id.* at 36:9-17; *see also id.* at 38:20-39:9 (confirming that he has neither any memory nor records of her calling other times). Mr. Hayes explained that during that conversation, Ms. McAlister asked him about an alleged change in the law applicable to state criminal cases and did not inquire about the status of Mr. Wheeler's appeal. *See id.* at 41:20-42:6.

Having heard this testimony in open court, the undersigned finds that Mr. Hayes's is the credible version of events. And, based on the credible evidence, Mr. Wheeler has not shown "by a preponderance of the evidence that he requested an appeal." *Tapp*, 491 F.3d at 266.

-9-

But that does not end the analysis, because the uncontroverted evidence shows that Mr. Hayes failed to consult with Mr. Wheeler following sentence. For the following reasons, however, Mr. Hayes's failure to do so was not unreasonable. That is, Mr. Hayes did not violate Mr. Wheeler's Sixth Amendment right to effective assistance of counsel by breaching a duty to consult with Mr. Wheeler following sentencing.

First, the credible evidence does not reflect that Mr. Wheeler "reasonably demonstrated to [Mr. Hayes] that he was interested in appealing." *Cong Van Pham*, 722 F.3d at 324. There was, moreover, a plea agreement that included a waiver limiting Mr. Wheeler's appellate rights.

And Mr. Wheeler had just received a sentence in the middle of the Guidelines range – just as Mr. Hayes had predicted he would. *See* Dkt. No. 20 at 31:1-8 ("The last conversation I had with Mr. Wheeler regarding [his probable sentence], I let him know, our judge is very well known for kind of going down the middle of the guidelines unless there's something really mitigating or something really aggravating. So expect a sentence -- I think I told him expect right around a 15-year, and he wound up getting 14 years, so, but, I mean, we knew within 12 months where it was going to lie."). Thus, "nothing material changed" as a result of sentencing. *United States v. Calderon*, 665 F. App'x 356, 365-66 (5th Cir. 2016) (per curiam) (distinguishing *Cong Van Pham*, in which the "failure to consult with [the defendant] following his sentence was unreasonable because changing circumstances had raised the possibility of a new claim"; "In Calderon's case, however, his claim concerns whether the Plea Agreement's factual basis was sufficient to support his guilty plea. The entire basis for that was

-10-

claim was known at the time he entered his guilty plea.").

That said, a change in the law that affects Mr. Wheeler's career-offender enhancement has occurred since his sentencing.

> Q What was it that you were wanting to appeal?
> A I mean, for one, I wanted to appeal the career offender because he had showed -- before the [PSR] came out, when we seen the Probation person, he showed me that I was in a certain guideline. He said it was a possibility that I can get careered out. But when the [PSR] came out and I seen how much time it was, and I -- that's when I noted that I wanted to appeal.
> Q But, now, didn't it happen later that subsequent cases after you were sentenced called into question the career offender?
> A Yes, ma'am.
> Q All right. But those cases weren't decided at the time you were sentenced, correct?
> A No, ma'am.
> Q And so there wouldn't have been a legitimate objection or question about your career offender designation at the time you were sentenced, correct?
> A I mean, that's why I told him I wanted to appeal, because I feel like he should have known that the case was in court. Because my -- a couple of more of my co-defendants' lawyer set their -- two of us, three of us supposed to got sentenced on the same date. But they lawyer set theirs off, one of them lawyers set theirs off until the outcome of those cases.

Dkt. No. 20 at 17:10-18:8; *see also id.* at 21:19-22:21 ("Q There were cases that were before appellate bodies that may have affected how your case went? A Yes, sir. Q And are you telling this Court that, not that you have to have a crystal ball or that lawyers have crystal balls or that they're all-knowing, but that it would have been prudent to have postponed your sentencing? A Yes, sir.").

The cases that Mr. Wheeler appears to reference are the legal dominoes set in motion when the Supreme Court decided *Mathis v. United States*, 136 S. Ct. 2243 (2016), on June 23, 2016 – two months after Mr. Wheeler's sentencing. That decision

resolved a circuit split about when the modified categorical approach can be applied to try to narrow a statute when a court is considering whether that statute qualifies as a certain type of offense under federal criminal and immigration laws.... *Mathis* held that only the elements matter. So when a statute merely sets out multiple means for committing a crime, some of which match the generic offense and others that do not, the ordinary categorical approach applies and there is no match to the generic offense.

*Gomez-Perez v. Lynch*, 829 F.3d 323, 326-27 (5th Cir. 2016).

The modified categorical approach may only be applied where a statute is "divisible" – that is, the statute "'sets out one or more elements of the offense in the alternative – for example, stating that burglary involves entry into a building or an automobile.'" *United States v. Hinkle*, 832 F.3d 569, 573 (5th Cir. 2016) (quoting *Descamps v. United States*, ___ U.S. ___, 133 S. Ct. 2276, 2281 (2013)). Under this approach, "a court may look to certain documents, including the indictment and the judgment, to narrow an offense that otherwise would not be a categorical match with an enumerated offense." *Gomez-Perez*, 829 F.3d at 326; *see also Descamps*, 133 S. Ct. at 2281 ("If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction.").

*Sanchez-Sanchez v. United States*, No. 3:16-cv-1434-D, 2017 WL 477314, at *2 (N.D. Tex. Feb. 6, 2017).

One domino to fall after *Mathis* was *United States v. Ford*, 509 F.3d 714 (5th Cir. 2007) – the controlling precedent at the time of Mr. Wheeler's sentencing that justified his career-offender enhancement.

On January 18, 2017 – almost nine months after Mr. Wheeler's sentencing – the United States Court of Appeals for the Fifth Circuit, in *United States v. Tanksley*, 848 F.3d 347 (5th Cir.), *supplemented by* 854 F.3d 284 (5th Cir. 2017), held that *Mathis*

overturned *Ford*, in which the Court of Appeals had "held that a conviction for possession with intent to deliver a controlled substance under section 481.112(a) of the Texas Health and Safety Code ... qualifies as a 'controlled substance offense' under the [Guidelines]," 848 F.3d at 349; *see id.* at 352 ("*Mathis* is more than merely illuminating with respect to the case before us; it unequivocally resolves the question in favor of Tanksley. *Ford* cannot stand. Section 481.112(a) is an indivisible statute to which the modified categorical approach does not apply." (citations and internal quotation marks omitted)).

As such, Tanksley's prior conviction under Section 481.112(a) could not count as "a controlled substance offense" under the career offender provision of the sentencing guidelines, under which

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). And today, a prior conviction under Section 481.112(a) does not count as "a controlled substance offense" under Section 4B1.1. *See, e.g., United States v. Hott*, 866 F.3d 618, 621 (5th Cir. 2017) ("This court recently held that Texas possession with intent to deliver a controlled substance does not qualify as a controlled substance offense under the Guidelines. Based on *Tanksley*, the Government concedes error in calculation of the Guidelines range." (citation omitted)).

But the question for the Court is whether Mr. Hayes was constitutionally

ineffective for failing to anticipate this change in the law such that he should have consulted with Mr. Wheeler after sentencing in April of 2016 because a rational defendant would have, at that time – prior to *Mathis* and *Tanksley* – wanted to challenge the career-offender enhancement. *Cf. Green v. Johnson*, 116 F.3d 115, 1125 (5th Cir. 1997) ("[T]here is no general duty on the part of defense counsel to anticipate changes in the law."). Said another way, a pre-*Mathis*/pre-*Tanksley* challenge to that enhancement at that time was a non-frivolous ground for appeal.

Obviously, the legal challenge that Mr. Wheeler seems to believe should have been made on direct appeal was then-foreclosed by *Ford*. And, as the Fifth Circuit explained in *United States v. Fields*, 565 F.3d 290 (5th Cir. 2009) – in which the movant argued that his counsel was ineffective for failing to anticipate that the Supreme Court would issue a decision that would "creat[e] a new and previously un-rejected basis for applying *Apprendi[ v. New Jersey*, 530 U.S. 466 (2000),] to the Guidelines," *id.* at 293 (original brackets omitted) –

> the objective standard of reasonableness to which counsel are held requires that they research relevant facts and law, or make an informed decision that certain avenues will not be fruitful. Thus, solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention. Although a failure of counsel to be aware of prior controlling precedents in even a single prejudicial instance might render counsel's assistance ineffective under the Sixth Amendment, we have repeatedly held that there is no general duty on the part of defense counsel to anticipate changes in the law. Likewise, we have held that counsel is not ineffective for failing to raise a claim that courts in the controlling jurisdiction have repeatedly rejected, or even for not raising every nonfrivolous ground that might be pressed on appeal.

*Id.* at 294 (citations, quotation marks, and brackets omitted); *see id.* at 296 ("Counsel

-14-

is required to research facts and law and raise meritorious arguments based on controlling precedent, but the law of this circuit is clear that counsel need not anticipate changes in the law or raise meritless objections. We have never adopted the position that counsel might render ineffective assistance by failing to raise an objection whose favorable resolution is foreclosed by existing law." (citations omitted)); *see, e.g., United States v. Woods*, 714 F. App'x 455, 456 (5th Cir. 2018) (per curiam) ("Woods further asserts that his trial counsel rendered ineffective assistance by 'failing to argue that Texas Health & Safety Code Annotated, § 482.001(4)' – which defines simulated controlled substance – 'was overly broad and could not be applied to enhance' his sentence in light of [*Mathis*, *Hinkle*, and *Tanksley*]. Woods has not shown that counsel's performance was deficient under [*Strickland*], as those cases were decided long after Woods was sentenced." (citing *Fields*, 565 F.3d at 294)).

And, to the extent that Mr. Wheeler's argument relies on the temporal proximity of his sentencing to – particularly – the Supreme Court deciding *Mathis*, as one court has explained in the context of the Armed Career Criminal Act, a court's consideration of whether the categorical versus the modified categorical approach should apply to a state criminal statute (as discussed in *Mathis*) is akin to Alice chasing the White Rabbit:

> So here we go down the rabbit hole again to a realm where we must close our eyes as judges to what we know as men and women. It is a pretend place in which a crime that the defendant committed violently is transformed into a non-violent one because other defendants at other times may have been convicted, or future defendants could be convicted, of violating the same statute without violence. Curiouser and curiouser it has all become, as the holding we must enter in this case shows. Still

-15-

we are required to follow the rabbit.

*United States v. Davis*, 875 F.3d 592, 595 (11th Cir. 2017); *see also Mathis*, 136 S. Ct. at 2266-71 (Alito, J., dissenting).

Needless to say, it was not obvious that *Mathis* would overturn *Ford*. And Mr. Wheeler certainly has not shown that Mr. Hayes should have anticipated that would happen.

Moreover, a challenge to the career-offender enhancement was known to Mr. Wheeler prior to sentencing, as its inapplicability (on equitable, not legal grounds) was raised in his motion for variance and downward departure, *see Wheeler*, No. 3:15-cr-226-D (03) (N.D. Tex.), Dkt. No. 391, and was argued at sentencing, *see id.*, Dkt. No. 673. The Court's decision to sentence Mr. Wheeler as a career offender under the Guidelines did not therefore raise "the possibility of a new claim" that was also not frivolous. *See Calderon*, 665 F. App'x at 365-66.

For these reasons, Mr. Wheeler's second ground for relief should be denied.

II.    <u>Grounds 1, 3, and 4</u>

For similar reasons, the Court should deny the remaining grounds.

In the first and third grounds for relief, Mr. Wheeler challenges the Court's application of the Guidelines: that his "sentence was erroneously enhanced pursuant to USSG § 4B1.1 ... in violation of *United States v. Hinkle*" [Ground 1] and that "the drug quantity attributed to him is incorrect" [Ground 3]. Dkt. No. 1 at 4 & 6-7. But, as this Court held in another Section 2255 action in which the movant argued "that the Court misapplied the U.S.S.G. by increasing his offense level on account of his two

prior Texas convictions for possession with intent to distribute a controlled substance,"

> [a]ny claim that the Court erred when it calculated his guideline sentence ... "attacks head-on the sentencing Court's application" of the Sentencing Guidelines. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). [Such a] claim is not cognizable in this collateral proceeding. *See id.*
>
> "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed," and "[m]isapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in [Section] 2255 motions." *Id.* (citation omitted). [Mr. Wheeler] cannot here argue that the Court erred in relying on his prior Texas convictions when it calculated his Guideline sentence. *See, e.g., Fisher v. United States*, No. 4:17-cv-50, 2017 WL 3781855, at *2 (E.D. Tex. July 13, 2017), *rec. adopted* 2017 WL 3725295 (E.D. Tex. Aug. 28, 2017) ("[R]elief is unavailable under § 2255 based on *Mathis*, *Hinkle*, and *Tanksley*" because "the technical application of the Sentencing Guidelines does not raise an issue of constitutional dimension for purposes of § 2255 proceedings."); *see also Reeves v. United States*, No. 4:17-cv-268-O, Dkt. No. 3 at 3 (N.D. Tex. Dec. 4, 2017) (same).

*Villa-Sanchez v. United States*, No. 3:17-cv-3457-D-BN, 2017 WL 7804729, at *1 & *2 (N.D. Tex. Dec. 22, 2017), *rec. adopted*, 2018 WL 1083854 (N.D. Tex. Feb. 28, 2018), *mot. to amend judgment denied*, 2018 WL 2299057 (N.D. Tex. May 21, 2018).

Through Ground 4, Mr. Wheeler asserts that Mr. Hayes's alleged failure "to render adequate advice and for failing to keep [him] reasonably informed in order to make an intelligent plea ... impacted the voluntariness of his guilty plea." Dkt. No. 1 at 8. More specifically, Mr. Wheeler "understands" that, while Mr. Hayes was not "required to be clairvoyant," he argues that Mr. Hayes "should've been well aware of the recent case pertaining to the Career Offender Provision that had been argued and decided such as *Descamps*, *Shepard*, and other repeat offenders cases." Dkt. No. 2 at 17 (further asserting that *Mathis* "was granted Certiorari on January 19, 2016. Movant

- had yet to be sentenced. *Mathis* ... was argued before the Supreme Court on April 26, 2016. This argument occurred four days after the Movant was sentenced on April 22, 2016. Movant contends that this issue wasn't raised in the District Court and he wasn't allowed to bring it on Direct Appeal. *Mathis* was decided on June 23, 2016, and the Fifth Circuit Court of Appeals decided *Hinkle* on August 11, 2016, which was four months after the movant's sentencing. Had Movant's rights been perfected on Appeal, he would more than likely benefitted from the decision in *Mathis* or *Hinkle*'s case could've been his argument.").

As explained above, none of these cases overturned *Ford*. That did not occur until the Fifth Circuit decided *Tanksley* on January 18, 2017.

Regardless, Mr. Wheeler's argument misunderstands the burden required to show that his trial counsel was constitutionally ineffective with regard to a guilty plea alleged to be involuntary and unknowing. As Mr. Wheeler pleaded guilty, to establish prejudice under *Strickland*, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). And the cases concerning application of the Guidelines's career-offender enhancement that Mr. Wheeler argues Mr. Hayes should have advised him on have nothing to do with deciding whether to plead guilty or proceed to trial.

Mr. Wheeler has also "failed to  allege that going to trial would have given him a reasonable chance of obtaining a more favorable result."

That omission is fatal to his claim. As [the Fifth Circuit has] explained,

demonstrating prejudice requires showing not only that the petitioner would have gone to trial, but also "that going to trial ... would have given him a reasonable chance of obtaining a more favorable result." *United States v. Shepherd*, 880 F.3d 734, 743 (5th Cir. 2018) (alteration in original) (quoting *United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016) (en banc) ). *See also Batamula*, 823 F.3d at 241 (ruling allegations and evidence "suggesting only that [petitioner] would have proceeded to trial had he known" are insufficient to demonstrate prejudice); *United States v. Kayode*, 777 F.3d 719, 726 (5th Cir. 2014) ("Another important factor is whether the defendant has demonstrated that he was likely to succeed at trial."). In other words, "counsel's ineffectiveness is only a basis for vacating a conviction if there is a reasonable probability it made a difference to the outcome of the proceeding." *Young v. Spinner*, 873 F.3d 282, 285 (5th Cir. 2017). *See also Kayode*, 777 F.3d at 726 ("In assessing whether a reasonable defendant would have rationally chosen to go to trial under the circumstances, we also consider the risks faced by a defendant in selecting a trial rather than a plea bargain.").

*King v. Davis*, ___ F.3d ____, No. 15-20434, 2018 WL 3715589, at *3 (5th Cir. Aug. 3, 2018).

## Recommendation

The Court should deny Movant Alondo Wheeler's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 8, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE